2013-3092

# United States Court of Appeals
# for the Federal Circuit

———— ◆ ————

HANNAH HARDING,

*Petitioner,*

*v.*

UNITED STATES NAVAL ACADEMY,

*Respondent.*

*Petition for review of an arbitrator's decision in
FMCS No. 120516-55631-7 by Sean J. Rogers.*

## BRIEF FOR PETITIONER

THOMAS J. GAGLIARDO
AFGE LOCAL 1923 LEGAL
REPRESENTATION FUND
6401 Security Boulevard
Mail Stop 1-G-15
Baltimore, MD 21235
Tele: (410) 965-5566
tomgagliardo@gmail.com

SHANNON C. LEARY
RENN C. FOWLER
THE LAW OFFICES OF GARY M.
GILBERT & ASSOC.
1100 Wayne Ave., Suite 900
Silver Spring, MD 20910
Tel: 301-608-0880
rfowler@ggilbertlaw.com
sleary@ggilbertlaw.com

*Counsel for Petitioner*

NOVEMBER 27, 2013

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

*HANNAH HARDING v. UNITED STATES NAVAL ACADEMY*

No. 13-3092

## CERTIFICATE OF INTEREST

Counsel for the petitioner, Hanna Harding, certifies the following (use "None" if applicable; use extra sheets if necessary):

1.    The full name of every party or amicus represented by me is:

      Hannah Harding

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

      n/a

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

      n/a

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

      Thomas J. Gagliardo

      Shannon C. Leary
      Renn C. Fowler
      The Law Offices of Gary M. Gilbert & Associates, P.C.

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTEREST ...................................................................i

TABLE OF AUTHORITIES ....................................................................v

STATEMENT OF RELATED CASES ................................................ viii

STATEMENT OF JURISDICTION..........................................................1

STATEMENT OF ISSUES FOR REVIEW ..............................................1

STATEMENT OF THE CASE..................................................................2

STATEMENT OF FACTS ........................................................................3

    The Agency's Proposal: "Under the Influence" ...............................4

    Ms. Harding's Reply .......................................................................6

    The Agency Decision: "Illegal Drug Use." ....................................8

    The Arbitration...............................................................................12

SUMMARY OF ARGUMENT ...............................................................14

STANDARD OF REVIEW .....................................................................15

ARGUMENT ..........................................................................................16

    I.    MS. HARDING'S CONSTITUTIONAL DUE PROCESS
           RIGHTS WERE VIOLATED...................................................16

           A. MS. HARDING WAS DENIED DUE PROCESS BECAUSE
               THE AWARD UPHELD THE DECIDING OFFICIAL'S
               DECISION TO REMOVE HER FOR UNNOTICED
               CONDUCT. .........................................................................18

           B. MS. HARDING WAS DENIED DUE PROCESS BECAUSE
               SHE WAS NOT GIVEN NOTICE THE AGENCY WOULD
               RELY UPON THE POLICE REPORT................................20

           C. MS. HARDING WAS DENIED DUE PROCESS BECAUSE
               HER REMOVAL WAS BASED ON SEVERAL
               UNNOTICED AGGRAVATING PENALTY FACTORS. ..................23

1. MS. HARDING WAS DENIED DUE PROCESS
BECAUSE HER REMOVAL WAS BASED ON THE
UNNOTICED AGGRAVATING FACTOR THAT SHE
ACTED WITH INTENT. ...............................................23

2. MS. HARDING WAS DENIED DUE PROCESS
BECAUSE HER REMOVAL WAS BASED UPON THE
UNNOTICED AGGRAVATOR THAT IT WAS
CONSISTENT WITH DISCIPLINE IN SIMILAR CASES. ..........25

3. MS. HARDING WAS DENIED DUE PROCESS
BECAUSE HER REMOVAL WAS BASED UPON THE
UNNOTICED AGGRAVATOR THAT SHE HAD
OPERATED HER CAR IN AN IMPAIRED WAY,
ENDANGERING RESIDENTS OF THE NSA ...........................26

II. THE AWARD FAILED TO APPLY APPLICABLE FEDERAL
CIRCUIT AND BOARD PENALTY LAW. ..............................27

A. THE AWARD ERRED BY NOT REQUIRING THE
AGENCY TO PROVE, BY PREPONDERANT EVIDENCE,
ITS PENALTY-RELATED FACTS. ....................................28

1. THE AWARD ERRED BY NOT REQUIRING THE
AGENCY TO PROVE BY PREPONDERANT
EVIDENCE THAT MS. HARDING WAS AN
HABITUAL DRUG USER. ...........................................29

2. THE AWARD ERRED BY NOT REQUIRING THE
AGENCY TO PROVE BY PREPONDERANT
EVIDENCE THAT MS. HARDING ENDANGERED
ANYONE OR THAT SHE WAS ANY KIND OF RISK. ...............29

3. THE AWARD ERRED BY NOT REQUIRING THE
AGENCY TO PROVE BY PREPONDERANT
EVIDENCE THAT MS. HARDING'S SUPERVISORS
LOST TRUST AND CONFIDENCE IN HER. ..............................31

B. THE AWARD ERRED BY FAILING TO FIND THAT THE
PENALTY OF REMOVAL WAS OUTSIDE THE BOUNDS
OF REASONABLENESS. ...................................................33

C. THE AWARD ERRED BY FAILING TO CONSIDER
DISCIPLINE IMPOSED UPON COMPARATORS. ...........................36

III. THE AWARD ERRED IN CONCLUDING, CONTRARY TO THE
SUBSTANTIAL WEIGHT OF THE EVIDENCE, THAT THE
AGENCY ESTABLISHED NEXUS BETWEEN THE OFF-DUTY
CONDUCT AND MS. HARDING'S DUTIES. ........................................41

CONCLUSION ...............................................................................................43

ADDENDUM ...................................................................................................1

CERTIFICATE OF SERVICE .........................................................................1

CERTIFICATE OF COMPLIANCE .................................................................2

# TABLE OF AUTHORITIES

*Page*

**Cases**

*Adams v. Def. Logistics Agency*,
   63 M.S.P.R. 551 (1994) ...................................................................35

*Bonner v. Dep't of Veterans Aff.*,
   477 F.3d 1343 (Fed. Cir. 2007) .......................................................15

*Boucher v. U.S. Postal Serv.*,
   118 M.S.P.R. 640 (2012) ................................................ 36, 37, 38, 40

*Cornelius v. Nutt*,
   472 U.S. 648 (1985) ........................................................................27

*Douglas v. Veterans Admin.*,
   5 M.S.P.R. 280 (1981) ...................................................... 17, 28, 33, 36

*Gonzales v. Def. Logistics Agency*,
   772 F.2d 887 (Fed. Cir. 1985) .........................................................33

*Hayes v. Dep't of the Navy*,
   727 F.2d 1535 (Fed Cir. 1984) ........................................................17

*Jackson v. Dept. of Navy*,
   52 MSPR 1 (1991) ...........................................................................34

*Jefferson v. USPS*,
   73 M.S.P.R. 376 (1997) ...................................................................32

*Jenkins v. Environmental Protection Agency*,
   118 M.S.P.R. 161 (2012) .................................................................17

*King v. Nazelrod*,
   43 F.3d 663 (Fed. Cir. 1994) ...........................................................19

*Kirk v. Dept. of Navy*,
   58 MSPR 663 (1993) .......................................................................34

*Kruger v. Dep't of Justice*,
   32 M.S.P.R. 71 (1987) .....................................................................41

*Lewis v. Department of Veterans Affairs,*
    113 M.S.P.R. 657 (2010) ................................................................36

*Lopes v. Dep't of the Navy,*
    116 M.S.P.R. 470 (2011) ................................................................23

*Luciano v. Dep't of Treasury,*
    88 M.S.P.R. 335 (2001) ................................................................24

*Miguel v. Dep't of Army,*
    727 F.2d 1081 (Fed. Cir. 1984) .....................................................33

*Mojica-Otero v. Dept. of Treasury,*
    30 M.S.P.R. 46 (1986) ..................................................................20

*Omites v. USPS,*
    87 MSPR 223 (2000) ....................................................................34

*Perez v. USPS,*
    75 MSPR 503 (1997) ....................................................................34

*Scheffler v. Dep't of the Army,*
    117 M.S.P.R. 499 (2012) ..............................................................41

*Shelly v. Dept. of Treasury,*
    75 MSPR 677 (1997) ....................................................................34

*Spahn v. Dep't of Justice,*
    93 M.S.P.R. 195 (2003) .......................................................... 37, 38

*Stone v. FDIC,*
    179 F.3d 1368 (Fed. Cir. 1999)............................................ *passim*

*Villela v. Dep't of Air Force,*
    727 F.2d 1574 (Fed. Cir. 1984).....................................................33

*Voss v. USPS,*
    119 M.S.P.R. 324 (2013) ........................................................ 37, 38

*Ward v. U.S. Postal Serv.,*
    634 F.3d 1274 (Fed. Cir. 2011)............................................ *passim*

*Warren v. U.S. Postal Serv.*,
   497 Fed.Appx. 22 (Fed. Cir. 2012).....................................................17

*Webster v. Dep't of Army*,
   911 F.2d 679 (Fed. Cir. 1990)............................................................33

*White v. Dep't of Justice*
   328 F.3d 1361 (Fed. Cir. 2003).........................................................17

*Williams v. SSA*,
   586 F.3d 1365 (Fed. Cir. 2009).........................................................36

## Statutes

5 U.S.C. § 2302(b)(10)........................................................................41

5 U.S.C. § 7121(f)............................................................................ 1, 15

5 U.S.C. § 7512..................................................................................15

5 U.S.C. § 7513(a)..............................................................................41

5 U.S.C. § 7701(c)(1)..........................................................................28

5 U.S.C. § 7702(a).................................................................................1

5 U.S.C. § 7703(c)........................................................................... 1, 16

## STATEMENT OF RELATED CASES

Counsel knows of no other cases pending in this Court or in any other court that may directly affect, or be affected by, the Court's decision in this appeal.

## STATEMENT OF JURISDICTION

Appellant, a career employee who was removed from federal service, seeks to overturn an arbitration decision, rendered pursuant to a collective bargaining agreement, denying her grievance. Through her grievance, she sought reinstatement and to be made whole.

Appellant received the Arbitrator's January 31, 2013 Opinion and Award (Award), which is a final award that disposes of all parties' claims, on February 7, 2012. Appellant timely petitioned for review in this Court on March 28, 2013.

This Court has jurisdiction to review an arbitrator's decision pursuant to 5 U.S.C. §§ 7121(f) and 7702(a) and 28 U.S.C. § 1295(a)(9). Pursuant to 5 U.S.C. § 7703(c), this Court has the authority to overturn an arbitrator's decision if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence."

## STATEMENT OF ISSUES FOR REVIEW

Whether the Award erred in:

1. Failing to find a violation of Ms. Harding's Constitutional due process rights when the Proposal to Remove Ms. Harding ("Proposal") failed to provide Ms. Harding with notice of and opportunity to respond to the basis for removal, all

evidence relied upon in its decision to remove Ms. Harding, and the aggravating

penalty factors?

2.  Failing to require the US Naval Academy ("Agency") to prove all

penalty-related facts by the preponderant evidence?

3.  Failing to conclude, as established by the substantial weight of the

evidence, that the penalty of removal was improper because the Agency had

imposed disparate, lesser penalties upon other employees for similar or worse

offenses?

4. Finding, contrary to the substantial weight of the evidence, a nexus

between the off-duty conduct and the performance of Ms. Harding's duties?

5. Concluding, contrary to the substantial weight of the evidence, the

Deciding Official properly considered the *Douglas* factors and Ms. Harding's

removal was within the bounds of reasonableness?

## STATEMENT OF THE CASE

This case involves the removal from the Federal government of Hannah

Harding, an employee with appeal rights and a property interest in continued

employment.  On January 9, 2012, the Agency proposed to remove Ms. Harding, a

Cook at the Agency, for "being under the influence of illegal drugs and alcohol

while off-duty on government property."  On March 9, 2012, the Deciding Official

upheld Ms. Harding's removal, but on a different charge: "Illegal drug use after

2

you were arrested while operating a motor vehicle onboard the Naval Support

Activity."  The removal went to arbitration on October 18, 2012; on January 31,

2013, the removal was upheld.

## STATEMENT OF FACTS

Hannah Harding was a wage grade Cook, with 24 years of service, one year

shy of retirement, and with no prior discipline.  Appendix, 24 ("A24"); A55

(53:10).[1]  She "cook[ed] small items … dic[ed] food products … clean[ed] … very

simple items," and, even after the events herein, her supervisors had the confidence

in her and wanted her to continue working at the Agency.  A55 (50:16-51:2); A26-

27.

On the eve of her wedding, Ms. Harding celebrated with friends at her bridal

shower.  A23.

The next morning, her wedding day, she drove, off-duty, to the Naval

Station Annapolis ("NSA"), three miles from her duty station, to get a key for a

building for her wedding reception.  A24; A120-121.  After giving Ms. Harding

the key, an employee told the Navy Police to watch for a black female, allegedly

smelling of alcohol.  A172; A46-47 (17:19-18:4; 19:1-4).

---

[1] Due to the use of the condensed hearing transcript, citations to the transcript
within the Appendix are followed by the transcript page number(s) and line
citation in parentheses.

Officer Richmond Wilson saw Ms. Harding and stopped her solely because she was a black female. A172; A46-47 (17:19-18:9). He did not stop her because she was speeding, driving erratically or unsafely, or for any reason that would cause him to believe that she was "under the influence." A51 (36:9-37:5). Officer Wilson performed field sobriety tests, which he claims Ms. Harding did not pass, and asked her if she had recently used any drugs. A49 (26:1-27:21; 28:15-17). Ms. Harding compliantly stated she had used cocaine the previous night. A49 (28:15-17). Officer Wilson arrested Ms. Harding. A49 (28:10-12).

Shortly after the arrest, Ms. Harding took breathalyzer and blood tests. A50-51 (31:15-19; 34:1-5). The results of those tests did *not* confirm that Ms. Harding was under the influence. A50-51 (32:16-18; 34:21-35:2).

Ms. Harding, cited with four traffic offenses, ultimately pled guilty to a single traffic offense of driving or attempting to drive while impaired by drugs **or** alcohol. A86 (177:3-12). She was instructed to attend a rehabilitation program, which she was attending at the time of the arbitration hearing. A86 (177:19-20).

### The Agency's Proposal: "Under the Influence"

The Agency proposed Ms. Harding's removal based on charge of: "being under the influence of drugs and alcohol while off-duty on government property." A20. The Proposal's specification to the charge states as follows:

> The reason for your proposed removal is as follows. You were arrested on 12 January 2012 by a Naval District Washington (NDW)

4

Police Officer while on the Naval Support Activity, Annapolis (NSA) grounds. It was found that you were under the influence of drugs **and** alcohol and you admitted the illegal use of cocaine to the NDW Officer.

A20 (emphasis added).

The Proposal referenced 5 C.F.R. 752, the Agency's Human Resources Manual, and the Negotiated Agreement between the Agency and the Union. A20. It did not reference the police incident report and related file that was referenced in the decision to remove Ms. Harding. A20-21; A37.

The Proposal noted three aggravating penalty factors that ostensibly justified the imposition of the most severe penalty, removal: (1) importance of Ms. Harding's position; (2) illegal drug use; and (3) risk to midshipmen and others if Ms. Harding resumed her duties. A20. It stated:

Your position as a Cook in the MFSD puts you in contact with young and impressionable midshipmen, and we are all responsible to uphold the trust of our Nation in the care and development of the Brigade. As such, illegal drug use cannot be tolerated. I am especially concerned that your off-duty misconduct involving illegal drugs and alcohol was discovered on board a Navy facility, that you were operating a motor vehicle, and that your illegal drug use may find its way into the work place, including food preparation spaces. I am unwilling to put at risk the health and safety of other Naval Academy employees, midshipmen, and the families of those who live aboard NSA and the Naval Academy by allowing your continued presence on the Naval Academy complex.

A20.

5

**Ms. Harding's Reply**

Ms. Harding filed a written reply, taking responsibility for her actions, expressing sincere remorse, and highlighting her 24 years of service with a clean record. A23-25. She did not admit that she was an illegal drug user or that she was under the influence on January 12, 2012. A23-25. Her reply shows that she was also, at that time, on several prescription medications, including hydrocodone, which could have caused the behavior the officer witnessed. A24; A26. The arresting officer hastily concluded that his observation of Ms. Harding was indicative of being under the influence of alcohol or illegal drugs. A49 (28:10-12). It could not have been indicative of Ms. Harding's admitted cocaine use, however, as the effects of cocaine last only a few minutes to an hour. Cocaine: Abuse and Addiction, *available at* http://www.drugabuse.gov/publications/research-reports/cocaine-abuse-addiction/what-are-short-term-effects-cocaine-use (last visited Nov. 25, 2013).

Ms. Harding also included with her Reply statements from her supervisors, voicing their support for her. A27-28. Indeed, David O'Malley, the Food Service Director, even spoke with Proposing Official, Capt. Glen Stafford, prior to the Proposal, suggesting that because Ms. Harding had a clean record, was a good worker, and was only a year from retirement, she be given a last chance agreement. A55 (53:2-12). Ms. Harding's supervisors also praised her in their testimony at

hearing as a "good worker," and someone who went "above and beyond," often helping other employees with their tasks after she was done with her own. A55 (51:17-18); A69 (107:9-16); Tr. 131:6-12; A75 (131:6-12) . Gregory Hunt, Ms. Harding's supervisor for seven to eight years, explained that despite the reasons for Ms. Harding's removal, he would be willing to work with Ms. Harding again because, "it wasn't the job, what happened. So it didn't influence her working, what her working hours were or if she was coming to work or whatever.  It happened when she was off duty.  So [he] still would have her back because she haven't [sic] shown no signs of anything there on the job of that [drug and/or alcohol use]." A69 (109:8-10).  Likewise, Alfred Johnson, who was Ms. Harding's supervisor from January 2010 until her termination and worked with her for approximately seven years, explained that despite cocaine use being serious, he would be willing to work with Ms. Harding again because, he believed, she does not pose a danger to herself or others.   A75-76 (131:13-132:16; 133:12-134:8). This belief was based on his years of working with Ms. Harding, during which time "she has always been coherent and in the right mind and stature when [they] worked together."   A76 (134:17-135:2; 135:89). He has observed her using sharp instruments and hot implements, which she always used safely.  A76 (136:13-137:7).

**The Agency Decision: "Illegal Drug Use."**

The Deciding Official upheld the adverse action against Ms. Harding, based on her presumed "illegal drug use":

1. Reference (a) notified you of a proposal to remove you from your position *for illegal drug use* after you were arrested while operating a motor vehicle onboard the Naval Support Activity.… After careful consideration (outlined below), I have decided to sustain the proposed removal.

2. I *carefully reviewed references (a) through (c) before making my decision.* I find the specific charges outlined in reference (a) to be fully supported by the evidence of record. Your actions have adversely affected the efficiency of the service, endangered the residents of the Naval Support Activity, and violated the Department of the Navy's Drug-Free Workplace policy.

A37(¶ ¶1-2) (emphasis added). Reference (b), alluded to above, was the "incident report … and related case file," which had not been provided with, or mentioned in, the Proposal. A37; A20-22. The Decision further characterized Ms. Harding's misconduct as "illegal drug use **and** impaired vehicle operation aboard a Navy facility." A38 (¶a). Similarly, the Deciding Official testified that he understood that Ms. Harding had "admitted to drug use in operation of a vehicle" and that her removal was proposed "due to the fact that use of drugs in a drug-free environment." A60 (73:12-18).

Regarding the Incident Report, the Deciding Official testified,

Q. Now you talked about -- do you know who -- what happened during this stop?

8

A. From the police report.

Q. Did you read the police report?

A. I did.

\*\*\*

Q. Do you know why Ms. Harding was stopped?

A. I do.

Q. Why was she stopped?

A. There was, again, in accordance with the police report, the same report that I reviewed, there was indications that there was a -- she was acting erratically. There was a police officer on duty on that road. It's an in-and-out road. It runs right by -- there's a children's playground, there's housing. And she came over and stopped and then proceeded with the sobriety test which indicated that she was not -- she failed.

Q. Do you know the results of a breathalyzer test?

A. It was in the police report. And I reviewed it at the time. I mean to call back exactly, you know, what the result were –

A61 (74:12-15; 75:6-76:1).

The Deciding Official upheld the removal penalty, and in doing so, he relied

on, *inter alia*, several unnoticed aggravating penalty factors, including intent,

endangerment, and other disciplinary actions, writing:

> Your behavior outlined in references (a) and (b)--**illegal drug use and impaired vehicle operation** aboard a Navy facility--is a serious offense. The United States Naval Academy is a Drug-Free Workplace and the **residents … must not be endangered**…. **Your decision to drive aboard the Naval Support Activity after using illegal drugs**

9

**and alcohol was intentional**. Also, your civilian position involves food preparation for Midshipmen and often distinguished visitors and guests. Nearly all Midshipmen Food Service Division (MFSD) employees come into contact with Midshipmen, and often the general public…. Your admitted cocaine use and disregard for the safety of others provides me no confidence that you should be allowed to continue to provide meals for Midshipmen….

…

Your job requires admission to the Naval Academy grounds and daily exposure to Midshipmen and to the foods which are prepared for their meals. The Naval Academy receives over one million visitors per year, and employees often have contact with the touring public during the course of their employment. **Illegal drug users negatively affect the public confidence in this institution.**

…

Moreover, the parents of Midshipmen have a reasonable expectation that we will assume high standards of conduct and performance from the civilian employees who prepare meals for their sons and daughters.

…

**Your conduct significantly impacted the confidence of your supervisors**…. **The Naval Academy cannot risk a food safety or other type of incident should you continue your illegal drug use and that behavior again find its way onto the installation.**

…

**Your subsequent endangerment** of Naval Support Activity residents only heightens the nature of the offense. **The penalty imposed is consistent with those imposed upon other employees with similar misconduct**, and Executive Order 12456 does not limit the command's ability to remove [you].

…

I find that no other penalty will deter illegal drug use (by you and other employees) as effectively as the proposed actions.

A38-40 (emphasis added).

The Deciding Official expanded upon these aggravators in his testimony.

Regarding intent, the Deciding Official testified, Ms. Harding made a "conscious

decision to get in a car and drive through a residential area." A61 (77:3-5). He

further described her conduct as "egregious." A61 (77:9). Regarding comparable

discipline, the Deciding Official testified that Ms. Harding's removal was

"consistent in terms of other cases, though not civilian, that I have adjudicated."

A63 (78:11-13). The Deciding Official further testified that he was aware of other

cases and reviewed them. A62 (80:15-19). He asked his team whether "anything

like this happened in the past. And then [he] reviewed that for reference." A62

(81:2-4). He ultimately "review[ed] for reference" a case that was "several years

ago"… "[f]rom a consistency standpoint." A62 (81:4-13). Again, he swore on

cross-examination he "consulted from cases in the past written to give [him] a

perspective." A65 (96:11-12). However, he said he could not recall the case and

failed to provide specifics. A62 (80:21-81:9). And regarding endangerment, the

Deciding official testified as follows:

> I consider her actions so egregious…. And the analogous is if I have
> somebody that ingests something and then has a handgun and goes to
> shoot somebody but they miss, well, do I wait until they hit the person
> before I take action or do I take action when I have indications that it's
> against our standards…. Driving a car through a residential area
> under the influence of drugs or alcohol, to me I'm not ready for the
> bullet to hit….

A61-62 (77:8-78:9).

Finally, despite the Deciding Official's focus on his concern for the public's

confidence in the Agency, he conceded that, to his knowledge, no one outside of

the Agency was aware of the incident.  A65 (91:15-92:1).

## The Arbitration

At hearing, in addition to responding to the allegations in the Decision, Ms.

Harding presented information regarding disparate penalties.  A79 (146:3-19).  In

2002, Mr. Berry, a Materials Handler with the Agency, was arrested in a drive-by

shooting, admitted that he had a drug-use problem, and after being proposed for

removal, was given a last chance agreement.  A77-78 (142:116-146:2).  In 2003,

Mr. Brumwell, an Agency employee in the Public Works department, returned to

work drunk after being on leave for two hours.  A82 (158:6-158:11).  Upon his

return, he was taken to Occupational Health and became belligerent, fighting with

coworkers.  A82 (158:18-21).  Based on this incident, and despite having a prior

suspension for alcohol use, the Agency proposed to suspend him for only 30 days

for use of obscene and intimidating language.  A82 (159:18-160:4).  Ultimately,

the Agency placed him on a last chance agreement and held the 30-day suspension

in abeyance, pending his good conduct during the last chance period.  A82

(160:16-19).  In 2009, an Agency employee was arrested and charged with intent

to distribute cocaine but not terminated for the conduct.  A134-142.  In 2009 and

2010, two other employees were each suspended for only 14-days for being under

the influence of alcohol *while on duty*. A143-158. Finally, in two similar

instances in 2012, employees who consumed beer *with midshipmen on Agency*

*premises* were not terminated, despite at least one of the employees having had

engaged previously in similar conduct. A125-133.

After hearing, however, the Award upheld Ms. Harding's removal based on

the initial charge in the Proposal, i.e., "being under the influence" rather than the

charge in the final decision, "illegal drug use." A9.

Similarly, the award found nexus between Ms. Harding's off-duty conduct

and service efficiency:

> This is an extremely serious violation of USNA work rules.
>
> The record establishes that as a USNA Cook, who was responsible for food preparation for and service to 4500 Midshipmen, the Grievant held an important, demanding job. The record shows that her job required high-level skills involving not only the safe operation of food preparation equipment, but also the safe preparation, service and storage of food served to those 4500 Midshipmen and others.
>
> Based on these facts and circumstances, the Arbitrator finds that the nexus between the Grievant's off-duty misconduct and her job duties is self-evident…. This is particularly true since as her off-duty misconduct occurred on NSA which is Navy property.

A10.

Finally, the Award found that, "[w]hile at the outer extreme of the range of

penalties, removal is within the tolerable bounds of reasonableness," and that the

Deciding Official's "Decision and his supporting testimony show a careful and reasoned consideration of the applicable *Douglas* Factors." A10-11.

## SUMMARY OF ARGUMENT

The Agency denied Ms. Harding her Constitutional due process rights when it: removed her based upon conduct not charged in the Proposal; relied upon documents in removing her without providing her notice of those documents; and considered unnoticed penalty aggravators in removing her. First, the Proposal charged Ms. Harding with being "under the influence," but the Decision was based on her ostensible "illegal drug use," which was an unnoticed charge. Likewise, the Agency did not provide Ms. Harding with notice that they would rely upon a police report in deciding to remove her. Finally, the Agency removed Ms. Harding based on unnoticed aggravating factors, such as intent, discipline of other employees, and endangerment.

The Award also failed by not requiring the Agency to prove the penalty-related facts by the preponderance of the evidence, instead allowing the Agency to present nothing more than conclusory testimony and speculation to support all penalty-related facts. In doing so, the Award ignored the law of this Court and the Board that penalty-related facts must be proven by preponderant evidence.

The Award erred in summarily ignoring the substantial weight of the evidence regarding disparate, lesser penalties that the Agency imposed upon employees for conduct similar to, or worse than, Ms. Harding's alleged conduct.

The Award erred in finding, contrary to the substantial weight of the evidence, a nexus between Ms. Harding's off-duty misconduct and her duties. In doing so, the Award again relied upon conclusory and speculative testimony as to: the importance of Ms. Harding's job; her supervisors' loss of trust and confidence in her; and risk of recidivism.

Finally, the Award erred in concluding, contrary to the substantial weight of the evidence, that the Deciding Official properly considered the *Douglas* factors and that Ms. Harding's removal was within the bounds of reasonableness. The Award ignored that: Ms. Harding's supervisors' had continued confidence in her; there was no evidence supporting a need for rehabilitation and deterrence; the Agency imposed disparate penalties; and the penalty was not within the bounds of reasonableness.

## STANDARD OF REVIEW

This Court reviews an arbitrator's decision regarding an adverse action listed in 5 U.S.C. § 7512 "in the same manner and on the same basis," as matters decided by the Merit Systems Protection Board. 5 U.S.C. § 7121(f); *Bonner v. Dep't of Veterans Aff.*, 477 F.3d 1343, 1344 (Fed. Cir. 2007). This Court may overturn

15

decisions of the Merit Systems Protection Board, and therefore of an arbitrator, that are: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. §7703(c).

**ARGUMENT**

## I.    MS. HARDING'S CONSTITUTIONAL DUE PROCESS RIGHTS WERE VIOLATED.

Where a federal employee has a property right in continued employment, "the Due Process Clause of the Fifth Amendment requires that the employee be afforded notice 'both of the charges and of the employer's evidence' and an 'opportunity to respond' before being removed…." *Ward v. U.S. Postal Serv.*, 634 F.3d 1274, 1279 (Fed. Cir. 2011) (quoting *Stone v. FDIC*, 179 F.3d 1368, 1374-76 (Fed. Cir. 1999)).  The requirement regarding notice and an opportunity to respond applies to aggravating penalty factors as well.  In *Stone* this Court stated:

> Even the leading Board decision regarding the evaluation of the appropriateness of disciplinary penalties explains that aggravating factors on which the agency intends to rely for imposition of an enhanced penalty, such as a prior disciplinary record, should be included in the advance notice of charges so that the employee will have a fair opportunity to respond to those alleged factors before the agency's deciding official….

16

*Stone v. FDIC*, 179 F.3d 1368, 1376 (Fed. Cir. 1999) (quoting *Douglas v. Veterans Admin.*, 5 M.S.P.R. 280, 304 (1981)); *Jenkins v. Environmental Protection Agency*, 118 M.S.P.R. 161, 166 (2012).

The Court refers to three factors to determine "whether a due process violation has occurred because of consideration of information not included in the notice of proposed removal: 1) whether the information is new or merely cumulative; 2) whether the employee knew of the error and had an opportunity to respond; and 3) whether information was of the type likely to result in undue pressure on the deciding official to rule in a particular manner." *Warren v. U.S. Postal Serv.*, 497 Fed.Appx. 22, 25 (Fed. Cir. 2012).

Finally, this Court has held that, "where an argument represents a constitutional challenge to the agency's action," the argument need not be presented to the Board or arbitrator to be considered on appeal. *White v. Dep't of Justice,* 328 F.3d 1361, 1372 n.8 (Fed. Cir. 2003); *see Hayes v. Dep't of the Navy*, 727 F.2d 1535, 1538 (Fed Cir. 1984) (explaining that the Court would substantively address an argument, raised for the first time on appeal, alleging the denial of due process through an ostensibly deficient adverse action notice because the argument was based upon Constitutional grounds).

**A. MS. HARDING WAS DENIED DUE PROCESS BECAUSE THE AWARD UPHELD THE DECIDING OFFICIAL'S DECISION TO REMOVE HER FOR UNNOTICED CONDUCT.**

The only charge in the Proposal was "**being under the influence** of drugs **and** alcohol while off-duty on government property." A20 (emphasis added). The Decision, by contrast, was based on the claim that she used illegal drugs on government property. A37. Given the charged conduct in the Proposal, Ms. Harding replied only to whether or not she was "under the influence." A23-25. She acknowledged that she had engaged in one-time recreational use of cocaine at her bridal shower the night before and that she was using hydrocodone. A23-26. However, a one-time recreational use of cocaine hours before could not place her under the influence at the time she was stopped, given that the effects of cocaine last only a few minutes to an hour. Cocaine: Abuse and Addiction, *available at* http://www.drugabuse.gov/publications/research-reports/cocaine-abuse-addiction/what-are-short-term-effects-cocaine-use (last visited Nov. 25, 2013). Notably, the tests administered on Ms. Harding did <u>not</u> confirm alcohol or illegal drug use. A50-51 (32:16-18; 34:21-35:2).

Instead of upholding or denying the stated charge of being "under the influence," the Deciding Official added the new and more serious charge of illegal drug use. A37.

1. **Reference (a)** [proposal] notified you of a proposal to remove you from your position **for illegal drug use** after you were arrested

18

> while operating a motor vehicle onboard the Naval Support Activity.
> … I have decided to sustain the proposed removal.

A37.  "Illegal drug use" was not charged in the Proposal.  A20-21.  The Award failed to address that Ms. Harding was removed for unnoticed conduct, and in doing so, failed to recognize the deprivation of Ms. Harding's due process rights. A1-13.

The Deciding Official's testimony and the explanation of his Decision further demonstrate that he understood the charge to be "illegal drug use and impaired vehicle operation aboard a Navy facility."  A38 (¶a).  He testified incorrectly that Ms. Harding had "admitted to drug use in operation of a vehicle" and that her removal was proposed due to the "use of drugs in a drug-free environment."  A60 (73:12-18).  This was not the case: Ms. Harding admitted to one-time use, the night before, off Agency premises.  A49 (28:15-17).

The Award failed to address the due process violations inherent in the Agency removing Ms. Harding based on unnoticed conduct.  A1-13.  The Agency's action cannot be upheld based on a different charge that it could have noticed in the Proposal but did not.  In *King v. Nazelrod*, 43 F.3d 663, 666 (Fed. Cir. 1994) this Court held that, "[t]he Agency is required to prove what is charged, not some lesser offense that might be sustained by the facts of the specifications." Further, "that the agency could have charged appellant with other violations is irrelevant. The Board will not sustain an agency action on the basis of charges that

19

could have been brought, but were not." *Mojica-Otero v. Dept. of Treasury*, 30 M.S.P.R. 46, 50 (1986). The Award's failure to consider the due process implications raised by the Agency's final decision denied Ms. Harding her due process rights to notice and opportunity to reply.[2]

The Agency's reliance on uncharged conduct cannot pass the *Stone/Ward* test, as the conduct charged in the decision was new and material, not cumulative and not referenced in the Proposal. A20-21. Further, Ms. Harding had no reason to believe that she would be removed upon conduct distinct from the conduct charged in the Proposal. The Deciding Official based his Decision upon the uncharged conduct, and as such, the failure to provide notice of the conduct for which Ms. Harding was removed violated her due process rights. A37.

## B. MS. HARDING WAS DENIED DUE PROCESS BECAUSE SHE WAS NOT GIVEN NOTICE THE AGENCY WOULD RELY UPON THE POLICE REPORT.

The Decision specifically notes, **"Ref: (b) Naval District Washington incident report, 17 Jan 12 and related case file,"** and the Decision's penalty analysis states "[y]our behavior outlined in references (a) and **(b)--illegal drug use and impaired vehicle operation aboard a Navy facility**--is a serious offense."

---

[2] The Award compounded the error. Despite Ms. Harding, at hearing, defending against the allegations contained in the decision to remove her, (i.e., "illegal drug use" and impaired operation of a vehicle), the Award upheld the removal based upon the allegations in the Proposal, (i.e., "under the influence"). Given that those were not the reasons addressed at hearing, the Award deprived Ms. Harding yet again of the opportunity to defend herself.

A37-38.  Additionally, the Decision states, "you were arrested while operating a motor vehicle;" "I have carefully reviewed … references **(a) through (c)** [and] your actions have … endangered residents … and violated the Navy's Drug-free Workplace policy.  A37 (¶¶ 1-2); A38 (¶3a) (emphasis added).

The Deciding Official's testimony confirms his heavy reliance on the police report and related case file:

> Q. Now you talked about -- do you know who -- what happened during this stop?
>
> A. From the police report.
>
> Q. Did you read the police report?
>
> A. I did.
>
> ***
>
> Q. Do you know why Ms. Harding was stopped?
>
> A. I do.
>
> Q. Why was she stopped?
>
> A. There was, again, in accordance with the police report, the same report that I reviewed, there was indications that there was a -- she was acting erratically. There was a police officer on duty on that road. It's an in-and-out road. It runs right by -- there's a children's playground, there's housing. And she came over and stopped and then proceeded with the sobriety test which indicated that she was not -- she failed.
>
> Q. Do you know the results of a breathalyzer test?
>
> A. It was in the police report. And I reviewed it at the time. I mean to call back exactly, you know, what the result were –

A61 (74:12-15; 75:6-76:1).

Plainly, the Deciding Official relied on the police report in upholding Ms.

Harding's removal, but the report was not even mentioned in the Proposal, nor was

there any indication that it would be relied on in her removal. A20-21. Nowhere

in the Proposal is the police report referenced, discussed, noticed, or attached.

A20-21. In fact, nothing in the Proposal mentions "impaired" driving that

allegedly endangered anyone. A20-21. Yet, the Deciding Official relied upon the

report, which apparently drew his focus to the fact that there was a children's

playground, surrounding homes, etc., resulting in him emphasizing concern over

injuring children or people at some later date. A61 (74:12-15; 75:6-76:1). Ms.

Harding was deprived of any opportunity to defend herself against the alleged

concerns raised in the police report.

The Deciding Official's consideration of the police report as a basis for his

decision cannot survive the test set out in *Ward* and *Stone*. First, information in the

police report was new and material, not cumulative, and not referenced in the

Proposal. A20-21. Second, Ms. Harding could not have expected that police

report would be relied on because she was not charged on the basis of her arrest or

provided such notice and because her arrest was, at the time, an open parallel

matter. A24. Third, if she had notice that the police report would be relied upon,

she would have taken the opportunity to defend herself by explaining that she had

not "admitted to drug use in operation of a vehicle" on government property or endangered others by driving in an allegedly unsafe manner. A60 (73:12-18).

As a result, the Agency's reliance on the police report, both as to the merits and the penalty, was prejudicial and a violation of Ms. Harding's due process rights.

### C. MS. HARDING WAS DENIED DUE PROCESS BECAUSE HER REMOVAL WAS BASED ON SEVERAL UNNOTICED AGGRAVATING PENALTY FACTORS.

As noted above, an employee's due process right to notice and the opportunity to respond includes notice of all aggravating penalty factors that the Agency relied on in its penalty selection.

> When an agency intends to rely on an aggravating factor as the basis for the imposition of a penalty, such factors must be included in the advance notice of adverse action so that the employee will have a fair opportunity to respond to those factors before the deciding official.

*Lopes v. Dep't of the Navy*, 116 M.S.P.R. 470, ¶ 5 (2011); *Ward, supra* at 1280 (Fed. Cir. 2011); *Stone, supra* at 1376-77.

### 1. MS. HARDING WAS DENIED DUE PROCESS BECAUSE HER REMOVAL WAS BASED ON THE UNNOTICED AGGRAVATING FACTOR THAT SHE ACTED WITH INTENT.

The decision to remove Ms. Harding states that her "decision to drive aboard the Naval Support Activity after using illegal drugs and alcohol *was intentional*." A38 (¶a) (emphasis added). The Deciding Official testified that Ms. Harding made

a "conscious decision to get in a car and drive through a residential area." A61 (77:3-5).

The Deciding Official's consideration of intent as an aggravating factor cannot survive the *Stone/Ward* test. First, intent was new, material, and not mentioned in the Proposal. It is not an element of the charge "being under the influence of drugs and alcohol while off-duty on government property." A20 (¶4). Second, Ms. Harding did not know or have any reason to expect intent would be considered as an aggravating factor, and she had, therefore, no opportunity to respond. Third, intent is a very serious and critical aggravating factor; it is key to *Douglas* factor 1, regarded by the MSPB the starting point for a penalty analysis. *See Luciano v. Dep't of Treasury*, 88 M.S.P.R. 335, 343 (2001) ("The most significant Douglas factor is the nature and seriousness of the misconduct and its relation to the employee's duties…whether the offense was intentional or was frequently repeated"). Here, the Deciding Official merely speculated that Ms. Harding intentionally endangered residents at the NSA, something he considered "egregious," and necessitating removal, yet something of which Ms. Harding had no notice or opportunity to defend herself. A61 (77:9).

## 2. MS. HARDING WAS DENIED DUE PROCESS BECAUSE HER REMOVAL WAS BASED UPON THE UNNOTICED AGGRAVATOR THAT IT WAS CONSISTENT WITH DISCIPLINE IN SIMILAR CASES.

The Decision states, "[t]he penalty imposed is consistent with those imposed upon other employees with similar misconduct." A39 (¶g). The Deciding Official testified that Ms. Harding's removal was "consistent in terms of other cases, though not civilian, that I have adjudicated." A63 (78:11-13). The Deciding Official further testified that he was aware of other cases and reviewed them. A62 (80:15-19). He asked his team whether "anything like this happened in the past. And then [he] reviewed that for reference." A62 (81:2-4). He ultimately "review[ed] for reference" a case that was "several years ago"… "[f]rom a consistency standpoint." A62 (81:4-13). Again, he swore on cross-examination he "consulted from cases in the past written to give [him] a perspective." A65 (96:11-12). However, he said he could not recall the case and failed to provide specifics. A62 (80:21-81:9).

The Deciding Official's consideration of other, allegedly consistent, actions as an aggravating factor cannot survive the *Stone/Ward* test. First, that information was new, material, not cumulative, and not mentioned in the Proposal. A20-21. Second, Ms. Harding did not know or have any reason to expect that the Deciding Official asked his team to provide such information and she had, therefore, no opportunity to defend herself. Third, information as to prior actions is easily

something that, left unrebutted, can be seen by a Deciding Official as critical. The

Deciding Official made clear here that it was a significant factor. Had the Agency

provided notice of other discipline considered, Ms. Harding could have reviewed

those matters upon which the Deciding Official relied and highlighted material

differences between the cases.

**3. MS. HARDING WAS DENIED DUE PROCESS BECAUSE HER REMOVAL WAS BASED UPON THE UNNOTICED AGGRAVATOR THAT SHE HAD OPERATED HER CAR IN AN IMPAIRED WAY, ENDANGERING RESIDENTS OF THE NSA.**

The decision to remove Ms. Harding states that she "endangered the

residents of the" NSA, that her "impaired vehicle operation aboard a Navy facility

--is a very serious offense," and that "residents … including many young children,

must not be endangered…." A38-39. The Decision continues, Ms. Harding's

"subsequent endangerment of Naval Support Activity residents only heightens the

nature of the offense." A39 (¶g). Finally, the removal decision states Ms.

Harding's removal is necessary "to deter … endangerment of the residents of the

Naval Support Activity." A40 (¶h).

The Deciding Official testified, "in accordance with the police report, the

same report that I reviewed, there was indications that there was a -- she was acting

erratically. … [T] here's a children's playground, there's housing." A61 (75:9-15).

He testified that he ruled out a penalty less than removal "to deter similar

misconduct…. Specifically, the use of illegal drugs and endangerment…." A66 (94:10-14).

The Deciding Official's consideration of endangerment as an unnoticed aggravating factor cannot survive the *Stone/Ward* test. First, that information was new, material information, not cumulative, and not mentioned in the Proposal. A20-21. Second, Ms. Harding had no reason to expect the Agency would conclude her conduct put others at risk, and she had, therefore, no opportunity to respond. Third, had the Agency provided notice of its reliance on the endangerment of residents, Ms. Harding would have made clear to the Deciding Official that there was absolutely no indication that she was driving recklessly or that she had put anyone at risk. As such, the Agency's consideration of this unnoticed aggravator violated Ms. Harding's due process rights.

## II. THE AWARD FAILED TO APPLY APPLICABLE FEDERAL CIRCUIT AND BOARD PENALTY LAW.

Under *Cornelius v. Nutt*, 472 U.S. 648 (1985), arbitrators are required to apply the law of the Merit Systems Protection Board and Circuit when addressing personnel actions against federal employees. Here, the Arbitrator did not do so.

## A. THE AWARD ERRED BY NOT REQUIRING THE AGENCY TO PROVE, BY PREPONDERANT EVIDENCE, ITS PENALTY-RELATED FACTS.

The Agency is required to prove, by preponderant evidence, its penalty-related facts, not simply allege such facts as a matter of opinion or speculation.

> [I]nsofar as an agency's decision to impose the particular sanction rests upon considerations of fact, those facts must be established under the preponderance standard and the burden is on the agency to so establish them. *This is so whether the facts relate to aggravating circumstances in the individual case, the employee's past work record, nature of the employee's responsibilities, specific effects of the employee's conduct on the agency's mission or reputation, consistency with other agency actions and with agency rules, or similar factual considerations which may be deemed relevant by the agency to justify the particular punishment.* Section 7701(c)(1) admits of no ambiguity in this regard, since an agency's adverse action "decision" necessarily includes selection of the particular penalty as well as the determination that some sanction was warranted. The statute clearly requires that all facts on which such agency decision rests must be supported by the standard of proof set out therein.

*Douglas v. Veterans Affairs*, 5 M.S.P.R. 280, 297 (1981) (emphasis added).

Here, the Award accepted, without proof, virtually all penalty-related facts, supported only by conclusory opinion and speculation. The Agency did not even make any pretense of proffering evidence in support of its penalty-related facts, and the Award did not and could not make any related findings. A10-11. The Award accepted as true the following critical penalty-related facts: (1) that Ms. Harding was an habitual drug user; (2) that she posed a risk to herself and others; and (3) that she lost the confidence of her supervisors. *Id*.

28

## 1. THE AWARD ERRED BY NOT REQUIRING THE AGENCY TO PROVE BY PREPONDERANT EVIDENCE THAT MS. HARDING WAS AN HABITUAL DRUG USER.

Ms. Harding's removal is based on the Deciding Official's conclusory opinion that Ms. Harding was an habitual, illegal drug user. His references to Ms. Harding's continued illegal drug use can only be read as an unfounded yet clear conclusion that she was an habitual user: "Your admitted cocaine use … provides me no confidence that you should be allowed to continue;" "[i]llegal drug users negatively affect public confidence;" "cannot risk… a[n] incident should you continue your illegal use;" "no other penalty will deter illegal drug use (by you or other employees)." A38-40 (emphasis added).

Ms. Harding denied that she was a habitual user, and her candid admission regarding one-time use evinces nothing more than that: one-time recreational use on the evening before her wedding day. A49 (28:15-17). The Agency offered no proof that Ms. Harding was she was an habitual drug user, yet the Deciding Official relied upon this "fact" throughout his Decision.

## 2. THE AWARD ERRED BY NOT REQUIRING THE AGENCY TO PROVE BY PREPONDERANT EVIDENCE THAT MS. HARDING ENDANGERED ANYONE OR THAT SHE WAS ANY KIND OF RISK.

Ms. Harding's removal penalty is based on the Deciding Official's conclusory opinion that she endangered the residents of the NSA and on the

constant refrain that her "illegal drug use and that behavior [might] again find its way onto the installation" and endanger others.  A38-40.

More specifically, the decision to remove states "no other penalty will deter drug use (by you and other employees)...."  A40 (¶h).  Going further, the decision states that "[t]he Naval Academy cannot risk a food safety or other type of incident should you continue your illegal drug use and that behavior again find its way on to the installation."  A39 (¶f).  The Deciding Official testified many times to this end:

> I consider her actions so egregious....  And the analogous is if I have somebody that ingests something and then has a handgun and goes to shoot somebody but they miss, well, do I wait until they hit the person before I take action or do I take action when I have indications that it's against our standards....  Driving a car through a residential area under the influence of drugs or alcohol, to me I'm not ready for the bullet to hit....

A61-62 (77:8-78:9).

This alleged concern and conclusory testimony is outlandish.  To suggest that allowing Ms. Harding in the workplace after her one-time use of cocaine, which she readily admitted to and occurred under unique circumstances, is tantamount to allowing someone to shoot people in the workplace, is preposterous.  The Agency offered no evidence that Ms. Harding endangered anyone and no evidence of any risk of a repeat offense.  Ms. Harding was stopped by the Navy police merely because someone called and said to watch for a black female who

allegedly smelled of alcohol, not because she was driving in a dangerous manner, which the arresting officer conceded. A172. Further, the Deciding Official erroneously believed that Ms. Harding had "admitted to drug use in operation of a vehicle." A60 (73:12-18). Again, Ms. Harding admitted only to a one-time recreational use on the eve of her wedding, and that use would be insufficient for her to be "under the influence," as the effects of cocaine "disappear within a few minutes or within an hour." A49 (28:15-17); Cocaine: Abuse and Addiction, *available at* http://www.drugabuse.gov/publications/research-reports/cocaine-abuse-addiction/what-are-short-term-effects-cocaine-use (last visited Nov. 25, 2013).

Finally, there is no evidence of any likelihood of a recurrence or recidivism. The conduct here was an incident of single use arising out of a once in a lifetime event, Ms. Harding's wedding. The circumstances here are so unusual and so unrelated to Ms. Harding's job duties that it is safe to say it will not happen again.

### 3. THE AWARD ERRED BY NOT REQUIRING THE AGENCY TO PROVE BY PREPONDERANT EVIDENCE THAT MS. HARDING'S SUPERVISORS LOST TRUST AND CONFIDENCE IN HER.

Ms. Harding's removal penalty is based on the Deciding Official's conclusory opinion that Ms. Harding lost the trust and confidence of her supervisors. A39 (¶f) ("Your conduct significantly impacted the confidence of your supervisors."). The substantial weight of the evidence directly contradicts

this claim, and the Agency proffered no evidence to support the conclusory statement. Something more is required. *See Jefferson v. USPS*, 73 M.S.P.R. 376, 384–85 (1997) ("An agency's claim that supervisors have lost trust and confidence … must be supported by evidence and cannot be based solely on a mere conclusory statement").

Contrary to the Agency's claims, Ms. Harding's supervisors testified that despite the incident at issue, they continue to have confidence in her, that they do not believe she poses a threat to herself or anyone else, and that they would continue to work with her. A69 (109:8-10) ("[I] still would have her back because she haven't [sic] shown no signs of anything there on the job of that [drug and/or alcohol use]."). Indeed, Mr. O'Malley, the Food Service Director, even suggested that Ms. Harding not be terminated but given a last chance agreement instead. A55 (53:2-12)**.** Based on their years of experience with Ms. Harding and observation of her skill and reliability, Ms. Harding's supervisors testified that, even in light of the incident at issue, they believed she should continue working in her position with the Agency and that she did not pose a threat to herself or others. A75-76 (131:13-132:16; 133:12-134:8; 134:17-135:2; 135:89).

Given the Deciding Official's conclusory testimony, the void of any evidence as to endangerment, risk, and habitual drug use, and the intentional disregarding of the supervisors' testimony regarding their continued trust and

confidence in Ms. Harding, the Award erred by accepting the penalty, admittedly

based on those allegations which wholly lacked proof.

### B. THE AWARD ERRED BY FAILING TO FIND THAT THE PENALTY OF REMOVAL WAS OUTSIDE THE BOUNDS OF REASONABLENESS.

The arbitrator's role is, *inter alia,* to "consider whether a penalty is clearly

excessive in proportion to the sustained charges, violates the principle of like

penalties for like offenses, or is otherwise unreasonable under all the relevant

circumstances." *Douglas v. Dep't of Veterans Affairs*, 5 M.S.P.R. 280, 300-02

(1981); *Gonzales v. Def. Logistics Agency,* 772 F.2d 887, 889 (Fed. Cir. 1985)

(noting that a penalty will be overturned if it "exceeds the range of permissible

punishment or is 'so harsh and unconscionably disproportionate to the offense that

it amounts to an abuse of discretion'") (quoting *Villela v. Dep't of Air Force,* 727

F.2d 1574, 1576 (Fed. Cir. 1984)); *Webster v. Dep't of Army*, 911 F.2d 679, 686

(Fed. Cir. 1990); *Miguel v. Dep't of Army*, 727 F.2d 1081, 1083 (Fed. Cir. 1984).

Removal, based on a single isolated off-duty incident, is unconscionably

beyond the bounds of reasonableness. Based on hyperbole and unsupported by

evidence, the Deciding Official grossly overstated the seriousness of the

misconduct, e.g., intentional endangerment, etc., and the Award erred in accepting

the hyperbolic testimony. A10. As outlined above, the evidence does not support

the Agency's extreme characterizations, and where an agency exaggerates the

seriousness of the misconduct (a critical consideration), the arbitrator may

mitigate.  *Shelly v. Dept. of Treasury*, 75 MSPR 677, 683 (1997); *Omites v. USPS*,

87 MSPR 223, 229–30 (2000); *Perez v. USPS*, 75 MSPR 503, 506 (1997).

Going further, the Deciding Official's remarks about loss of confidence and

trust are also contrary to the evidence, and his claim that no penalty other than

removal will deter such future misconduct is without any evidentiary support.  A39

(¶f); A40 (¶h)

Similarly, the Deciding Official and Award both grossly exaggerated Ms.

Harding's position and role within the Agency.  The Award mischaracterized Ms.

Harding's job as "important, demanding … required high-level skills."  A10.  She

was a wage grade cook: "Working on the grill, cooking small items in the

oven…dicing food products… cleaning… very simple items," and her contact with

the public and midshipmen was minimal.  A55 (50:16-51:2).  She was not a

supervisor, not a law enforcement officer, not in a fiduciary position, not a safety

officer, not in a position of trust; she was in no position that could be held to a

"higher standard."  See *Kirk v. Dept. of Navy*, 58 MSPR 663, 671–72 (1993)

(holding that the agency was entitled to hold a supervisor to a higher standard of

conduct than nonsupervisory employees).

Such "job-hyperbole" cannot justify Ms. Harding's removal.  In *Jackson v.*

*Dept. of Navy*, 52 MSPR 1 (1991), the Board mitigated a 60-day suspension to 30

days; there, the deciding official testified that he considered the misconduct to be very serious because it went to an employee's trustworthiness and that appellant occupied a position of trust. The Board disagreed: the appellant was a meat cutter. *See also Adams v. Def. Logistics Agency*, 63 M.S.P.R. 551, 557 (1994) ("While the deciding official testified that he lost trust in the appellant . . . we find that the appellant, as a nonsupervisory woodworker, did not occupy a position requiring a special degree of trust").

Here, the record shows that Ms. Harding had a clean record, with no prior discipline and good performance appraisals. A6. She had 24 years of service and was one year shy of retirement, all of that marred by just one, isolated, unusual miscue. 24 ("A24"); A55 (53:10). The conduct charged here occurred the morning after her bridal shower, on the morning of her wedding. A23-24. The conduct here is so unrelated to Ms. Harding's job duties, and the circumstances are so unusual, a recurrence is out of the question. Finally if ever a case presented a potential for certain rehabilitation, this is that case. Ms. Harding is honest. When stopped on her wedding morning, she immediately acknowledged her misstep and accepted responsibility. A49 (28:15-17). The record plainly shows that Ms. Harding's removal is outside any parameters of reasonableness.

## C. THE AWARD ERRED BY FAILING TO CONSIDER DISCIPLINE IMPOSED UPON COMPARATORS.

The Agency erred in failing to consider penalties imposed upon Agency employees for similar conduct under similar circumstances, and the Award erred in failing to apply the Board's and Court's recent case law on disparate penalties. *Douglas v. Veterans Administration,* 5 M.S.P.R. 280, 306, has always held that a penalty analysis must take into consideration "consistency of the penalty with those imposed upon other employees for the same or similar offenses." Recently in *Williams v. SSA*, 586 F.3d 1365, 1367–68 (Fed. Cir. 2009), this Court remanded and ordered the Board to determine whether the Agency had sufficiently justified disparate imposition of penalties, notwithstanding the fact that the appellant's comparator had a different chain of command. As a result, the Board departed from its former restrictive view of disparate penalties and mandated instead a new two-prong test, which it has since clarified, stating as follows:

> To establish disparate penalties, the appellant must show that there is 'enough similarity between both the nature of the misconduct and the other factors to lead a reasonable person to conclude that the agency treated similarly-situated employees differently, but the Board will not have hard and fast rules regarding the 'outcome determinative' nature of these factors.

*Boucher v. U.S. Postal Serv.*, 118 M.S.P.R. 640, 647 (2012) (quoting *Lewis v. Department of Veterans Affairs,* 113 M.S.P.R. 657, P 15 (2010)).

36

For purposes of a disparate penalty analysis, the focus of the inquiry is on the underlying conduct, *not* the charge brought by the Agency or the Agency's characterization of that conduct. *Boucher*, 118 M.S.P.R. at 647 ("[T]he appellant must show that there is 'enough similarity between . . . *the nature of the misconduct*") (emphasis added). Given that the focus is on the underlying conduct, discipline imposed pursuant to settlement agreements may be considered. *Spahn v. Dep't of Justice*, 93 M.S.P.R. 195, 203 (2003) ("The fact that the comparative employees' proposed removals were resolved by settlement does not preclude the Board from finding that the appellant was similarly situated to them"); *see also Boucher*, 118 M.S.P.R. at 649-650 (conducting a disparate penalty analysis based on discipline pursuant to a settlement agreement).

Further, the passage of time does not necessarily limit comparison of disciplinary actions. *See Voss v. USPS*, 119 M.S.P.R. 324, 330 (2013) ("Although the 5-year lapse of time between the second accidents of the appellant and the comparator may be a legitimate factor in the agency's stricter treatment of the appellant, the record does not include any evidence that the agency changed its policies or notified its workforce of any change in its policies regarding penalties for safety violations during that period of time").

Here, in addressing other comparators, the Award erroneously concluded that the conduct and discipline at issue could not be considered because it was

pursuant to a settlement agreement, was too far removed from the conduct and discipline at issue in the instant matter, or was too dissimilar to Ms. Harding's conduct. A12-13. The comparators here engaged in the relevant conduct anywhere from the same year as the conduct at issue to nine or ten years prior. A77-78 (142:116-146:2); A82 (158:6-158:11); A134-142; A143-158. Given that the record is devoid of any evidence that the Agency changed any of the relevant policies or that it notified its employees of any such change, the conduct and discipline these employees received remains relevant to the disparate penalty analysis. *Voss, supra.* Likewise, the Arbitrator should have considered all discipline imposed pursuant to settlement agreements. *Spahn, supra.* Finally, the Arbitrator should have focused on the underlying conduct of the comparators, rather than the charge the Agency brought against each comparator. *See Boucher, supra.*

Based on the erroneous conclusion that the comparator employees could not be considered due to settlement agreements or the passage of time, the Award failed to consider the following disparate penalties.

In 2002, Mr. Berry, a Materials Handler employed by the Agency, was arrested in a drive-by shooting, admitted that he had used drugs and he had a problem, and after being proposed for removal, was given a last chance agreement. A77-78 (142:116-146:2).

In 2003, Mr. Brumwell, an Agency employee in the Public Works department, returned drunk to work after being on leave for two hours. A82 (158:6-158:11). Upon his return, he was taken to Occupational Health and became belligerent, fighting with coworkers. A82 (158:18-21). Based on this incident, and despite having a prior suspension for alcohol use, the Agency only proposed to suspend him for 30 days for use of obscene and intimidating language. A82 (159:18-160:4). Ultimately, the Agency placed him on a last chance agreement and held the 30-day suspension in abeyance, pending his good conduct during the last chance period. A82 (160:16-19).

In 2009, an Agency employee was arrested and charged with intent to distribute cocaine, but not terminated. A134-142.

In 2009 and 2010, two other employees were each suspended for only 14-days for being under the influence of alcohol *while on duty*. A143-158.

In two similar instances in 2012, employees who consumed beer *with midshipmen on Agency premises* were not terminated. A125-133.

The Award acknowledged all of these incidents but summarily discarded them as not "comparable" to Ms. Harding's actions without providing any explanation as to how they differ. A12-13. Indeed, if they are not comparable, that is only because many of them involved more egregious conduct. Unlike Ms. Harding's conduct, many of these incidents involve actually being under the influence not only on Academy grounds (rather than three miles away), but while

39

on duty. A24; A120-121. Further, some of the incidents involve employees drinking and being under the influence *with midshipmen*, whereas Ms. Harding's conduct was not observed by midshipmen or the public. A65 (91:15-92:1); A24; A120-121. A much clearer connection to their employment exists, given that much of it occurred on duty, on the Agency's grounds, and/or with midshipmen, and a much greater risk was imposed due to the nature of the acts at issue. Notably, for at least one comparator, the discipline that stemmed from him being under the influence while on duty was not his first disciplinary action for alcohol-related conduct. A82 (159:18-160:4). Even he was given a last chance agreement; yet, Ms. Harding, who was never disciplined for any performance or conduct issues whatsoever, was terminated without any concern for mitigating factors or disparate penalties. A82 (160:16-19).

Where the employee establishes disparate treatment in penalties imposed upon her and other employees for similar conduct under similar circumstances, "the agency must prove a legitimate reason for the difference in treatment by a preponderance of the evidence before the penalty can be upheld." *Boucher* at 647. Here, based on the conclusion that the employees discussed above were not comparators, the Award did not even address the penalties imposed upon the employees, and the Agency did not put forth any alleged justification for the more lenient treatment of the other employees. A12-13. As such, the disparate penalty

the Agency subjected Ms. Harding to makes it quite clear that the Award must be

overturned and Ms. Harding reinstated to her position with the Navy.

### III. THE AWARD ERRED IN CONCLUDING, CONTRARY TO THE SUBSTANTIAL WEIGHT OF THE EVIDENCE, THAT THE AGENCY ESTABLISHED NEXUS BETWEEN THE OFF-DUTY CONDUCT AND MS. HARDING'S DUTIES.

Ms. Harding's conduct, although on government property, was off-duty and

related to a personal task, wholly unrelated to her job duties.  The Agency's

authority to discipline for off-duty conduct is significantly restricted.  Under 5

U.S.C. § 2302(b)(10), it is a prohibited personnel practice to take a personnel

action based "on conduct which does not adversely affect the performance of the

employee…or the performance of others."  Further, 5 U.S.C. § 7513(a) requires  an

agency to prove by preponderant evidence that there is a vital connection between

off-duty misconduct and the employee's job-related responsibilities.  *Scheffler v.*

*Dep't of the Army*, 117 M.S.P.R. 499, 503 (2012).

An agency may show the required nexus in one of three ways: (1) a

rebuttable presumption of nexus that may arise in certain egregious circumstances

based on the nature and gravity of the conduct; (2) a showing by preponderant

evidence that the conduct affects the employee's or his co-workers' job

performance, or management's trust and confidence in the employee's job

performance; or (3) a showing by preponderant evidence that the conduct

interfered with or adversely affected the agency's mission.  *Kruger v. Dep't of*

*Justice*, 32 M.S.P.R. 71, 74 (1987).

Using these standards, the substantial weight of the evidence does not support the finding of a nexus. First, the Award erred by stating nexus was "self-evident" and that Ms. Harding's conduct was "extremely serious." As shown above, that is erroneous. A10. Ms. Harding's conduct does not raise a presumption of nexus, and the Award provided no further reasoning as to why it allegedly did create a nexus. *Id.* Second, there is no relationship between her conduct and her job duties. Ms. Harding is a cook: She peels vegetables and cooks simple items such as hamburgers. A55 (50:16-51:2); A122-124. Third, there is no evidence that her conduct would affect her performance, her coworkers' performance, or management's trust and confidence in her. All the evidence is, as discussed above, to the contrary. A69 (109:8-10); A75-76 (131:13-132:16; 133:12-134:8). Finally, the Deciding Official's general testimony cannot support a finding of nexus *vis-à-vis* agency mission. It is uncontroverted that Ms. Harding did routine kitchen work, that she received good performance appraisals, and that the conduct at issue did not arise out of her duties, nor was it in any way related to her duties or job performance. A6; A55 (50:16-51:2); A122-124. Indeed, the conduct at issue occurred only by happenstance on a Navy facility, not at her duty station, and grew not out of her job duties but out of a purely once in a lifetime personal circumstance, never to happen again. A22-24.

42

## CONCLUSION

In removing Ms. Harding, the Agency violated her due process rights in a variety of manners. Moreover, the Award did not require the Agency to prove all penalty-related facts by the preponderant evidence, instead basing the decision upon speculation and opinion. Further, the Award ignored the substantial weight of the evidence regarding the Agency's disposition of disparate penalties. The Award also erred by failing to conclude that the substantial weight of the evidence demonstrated removal was outside the bounds of reasonableness. Finally, the Award erred in ignoring the substantial weight of the evidence that clearly established there is no nexus between Ms. Harding's off-duty conduct at issue and her job duties.

Respectfully submitted,

/s/ Thomas J. Gagliardo
Thomas J. Gagliardo
AFGE Local 1923 Legal Representation Fund
6401 Security Blvd., Mail Stop 1-G-15
Baltimore, MD 21235
Tel: (410)965-5566
tomgagliardo@gmail.com

Shannon C. Leary
Renn C. Fowler
*Of Counsel*
The Law Offices of Gary M. Gilbert & Assoc.
1100 Wayne Ave., Suite 900
Silver Spring, MD 20910
Tel: 301-608-0880
rfowler@ggilbertlaw.com
sleary@ggilbertlaw.com

*Counsel for Petitioner*

# ADDENDUM

**BEFORE
SEAN J. ROGERS
ARBITRATOR**

In the Matter of Arbitration between:

**AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES, Local 1923,**

    *Union*

**and**

**UNITED STATES NAVAL ACADEMY,**

    *Employer.*

*(Grievant: Hannah Harding)*

FMCS No. 120516-55631-7



RECEIVED
FEB 7 2013
AFGE Local 1923

## OPINION AND AWARD

**APPEARANCES:**

**On behalf of the American Federation of Government Employees, Local 1923:**

Thomas J. Gagliardo, Esq., General Counsel, AFGE, Local 1923 – *representing the Union*.

**On behalf of the United States Naval Academy:**

Terry P. Cook, Esq., Command Counsel, United States Naval Academy – *representing the Employer*.

### PROCEDURAL BACKGROUND OF THE ARBITRATION

This arbitration arises out of a dispute between the American Federation of Government Employees, Local 1923 (AFGE or Union) and the United States Naval Academy (USNA or Agency) (collectively the Parties).

**A1**

The arbitration takes place pursuant to the *Negotiated Agreement Covering Security and Ungraded Units of the United States Naval Academy and Local #896 American Federation of Government Employees* (CBA), effective March 15, 1982.[1] On April 4, 2012, pursuant to Article 39, *Grievance Procedure*, AFGE grieved the March 16, 2012 removal of Hannah Harding, a USNA Cook in violation of CBA Article 37, Section 2, *Disciplinary and Adverse Actions* and Article 38, Sections 1 and 2, *Employee Assistance Program*.

The Parties were unable to resolve the dispute through the CBA grievance procedure and AFGE invoked arbitration. From a panel of arbitrators provided by the Federal Mediation and Conciliation Service, I was selected by the Parties to resolve the dispute.

A hearing was held on October 18, 2012, at the United States Naval Academy. AFGE was represented by Thomas Gagliardo, Esq., General Counsel, AFGE, Local 1923. USNA was represented by Terrence P. Cook, Esq., USNA, Command Counsel. At the hearing, the Parties were each afforded a full opportunity: to present testimony, documents and other evidence; to examine and cross-examine witnesses; and to challenge documents and other evidence offered by the other Party.

AFGE's witness were: Gregory Hunt, Cook Supervisor USNA (late shift); Alfred Johnson, Cook Supervisor USNA; Clyde Carr, Sr., Baker USNA and AFGE, Local 1923 Chief Steward; Edward Gough, IV, Vice President AFGE, Local 1923; and Hanna Harding, formerly Cook USNA and the Grievant. USNA's witnesses were: Richmond Wilson, Naval District Washington Police Corporal; David O'Malley, Food Service Director USNA; and Robert Edward Clark, II, Captain USNA and Commandant of Midshipmen. The witnesses were sworn and sequestered, and a transcript was taken. Joint Exhibits (Jx) 1-7, AFGE Exhibits (Ux) 1-6 and USNA Exhibits (Ex) 1-6 were offered and received into the record. The Parties' counsels elected to submit post-hearing briefs and the final submission was received on December 18, 2012. Thereafter, the record closed.

The Agency and the Union agreed that there were no issues of timeliness or arbitrability, and the dispute is ripe for an Award. This Opinion and Award is based on the entire record. It considers the Parties' arguments, interprets and applies the Agreement

---

[1] AFGE, Local 1923 is the successor to AFGE, Local 896. The CBA, effective March 15, 1982, has remained in effect.

and work rules based on the facts established at hearing.

## STATEMENT OF THE ISSUE

Whether the Grievant, Hanna Harding, was removed for just cause? If not, what shall be the remedy?

## RELEVANT CONTRACT AND EMPLOYEE HANDBOOK PROVISIONS

From the *Negotiated Agreement Covering Security and Ungraded Units of the United States Naval Academy and Local #896 American Federation of Government Employees* (CBA), effective March 15, 1982. (Jx 1).

## ARTICLE 37
## DISCIPLINARY AND ADVERSE ACTIONS

<u>Section 1.</u> All formal disciplinary actions including letters of reprimand, suspensions of any length, adverse actions for cause and for unacceptable performance may be taken only for just cause. Further, disciplinary actions and adverse actions for cause may be taken against employees only for such cause as will promote the efficiency of the service, and must be supported in accordance with section 7701 of Title 5, U.S.C. by a preponderance of the evidence. Reduction in grade or removal for unacceptable performance may be taken against an employee only when the employee fails to meet established performance standards in one or more critical elements of his position, and must be supported in accordance with section 7701 of Title 5, U.S.C. by substantial evidence.

\*       \*       \*

# DISCUSSION

**I. The Parties**

The United States Naval Academy (USNA or Agency) was founded in 1845 in Annapolis, Maryland. Today, the USNA provides academic and professional training to approximately 4500 Midshipmen who become United States Naval Officers after graduation. Relevant to this dispute, the USNA employs approximately 80 civilians, among them the Grievant, in the Midshipmen Food Services Division (MFSD) which provides the Midshipmen food service.

3

**A3**

The American Federation Government Employees, Local 1923 is the exclusive representative of employees in the ungraded unit and the security unit, excluding supervisors and management officials, in the Naval Academy Fire Department; Police and Guard Force; Guards, Bancroft Hall; and Telephone Operators. (Jx 1). AFGE's ungraded unit includes employees in the MFSD.

At the time of the events giving rise to this dispute, the Grievant, **_Hanna Harding_**, had been a USNA Cook in the MFSD for approximately 24-years.

## II. Statement of the Case and Undisputed Facts

The discussion below describes the undisputed relevant and material facts forming the basis of the USNA's decision to remove the Grievant.

On January 12, 2012, the Grievant, while off-duty, drove her personal vehicle onto the Naval Support Activity (NSA) facility in Annapolis, Maryland. NSA is located just across the Severn River, northeast of the USNA. NSA provides base-operating support services to the USNA supporting its mission of Midshipmen academic and professional training and to other Naval operations in the Severn River, Chesapeake Bay and Baltimore area.

The Grievant drove on the NSA to pick up a key for a NSA banquet room, the Bay Room, which she had reserved for that evening for a personal event. When the Grievant picked up the key, she was observed by an NSA employee to be acting strangely. After the encounter, the NSA employee notified the NSA police.

**_Corporal Richmond Wilson_**, a Naval District Washington (NDW) Police Officer assigned to NSA, was called as the Agency's first witness. He testified that on January 12, 2012, he was on-duty at NSA at the Bennion and Kincaid Roads intersection when he, "received a call to be on the look out for specifically a red pickup driven by a black female . . . for a person that could possibly be under the influence of drug or alcohol." (Tr 17-18). When he saw a red pickup approach the intersection, he stopped the vehicle and approached the driver's side window. He said, the Grievant was behind wheel and that she smelled of alcohol. (Tr 19). He said, when the Grievant exited the vehicle, "she was bumping, leaning and holding the railing of the pickup and then she sat on bumper." (Tr 25).

4

**A4**

Wilson testified that he asked the Grievant "have you been doing any drugs?" (Tr 28). He said, the Grievant, "stated she had snorted coke, but it wasn't that day, it was the night before." (Tr 28). Wilson administered several standard field sobriety tests to the Grievant which she failed. Based on his traffic stop and his ensuing investigation, Wilson testified that he arrested the Grievant for driving a motor vehicle under the influence of drugs and/or alcohol. Ultimately, she was charged with four traffic offenses: driving while under the influence of alcohol; driving while impaired by alcohol; driving or attempting to drive while impaired by drugs or alcohol; and driving or attempting to drive while impaired by a controlled dangerous substance. (Jx 2, Tab H). The record establishes that the Grievant pled guilty to the offense of driving or attempting to drive while impaired by drugs or alcohol in Federal Magistrate's Court, but USNA asserts that her conviction played no part in this disciplinary action as it occurred well after her removal.

On February 9, 2012, The Grievant received a Notice of Proposed Removal (Notice) from Glen T. Stafford, Captain USNA. (Jx 2, Tab D). The Notice states, in pertinent part,

> I propose to remove you from your position of Cook, WG-7404-04 and the Federal Service, for being under the influence of illegal drugs and alcohol while off-duty on Government property. . . . The reason for your proposed removal is as follows. You were arrested on 12 January 2012 by a Naval District Washington (NDW) Police Officer while on the Naval Support Activity, Annapolis (NSA) grounds. It was found that you were under the influence of drugs and alcohol and you admitted the illegal use of cocaine to the NDW officer. (Jx 2, Tab D).

On March 2, 2012, AFGE responded in writing to the Notice. (Jx 2, Tab E). On March 9, 2012, the Grievant received the Notice of Decision on Proposed Removal (Decision) from **Captain Robert E. Clark, II**, USNA Commandant. Clark sustained the Grievant's removal effective March 16, 2012. (Jx 2, Tab E).

On April 4, 2012, pursuant to the CBA, AFGE grieved the Grievant's removal. (Jx 2, Tab F). On May 7, 2012, **F. J. Rubino**, Director, Government Affairs USNA, denied the grievance. (Jx 2).

On May 14, 2012, the Union invoked arbitration. (Jx 6).

5

**A5**

### III. Contention of the Parties

### A. USNA contends as follows:

USNA asserts that there is no disagreement that the Grievant was off-duty when arrested and that she was otherwise a good employee without any prior disciplinary action. The Agency argues that, based on the facts and circumstance, there is nexus between her misconduct and her USNA employment so that removal is an appropriate remedy and the Arbitrator should sustain the Agency's decision.

While the Grievant's ingestion of cocaine and/or alcohol occurred off-duty and also outside the USNA, had she been stopped by civilian authorities for the same misconduct, the USNA's action would most likely have been much different. The Grievant drove on NSA, which elevated the misconduct to a level requiring close scrutiny and assessment of her continued employment. The Deciding Official, Captain Clark, testified her operation of a motor vehicle while clearly impaired on NSA property and in an area that included a children's park and the housing of military families that was especially troubling to him.

Supporting the nexus, David O'Malley, Director, MFSD, testified that the Grievant's duties included preparing, cooking and serving Midshipmen's food, and clean-up. He testified that her job required her to use sharp utensils, operate stoves, ovens, and hot plates all of which required absolute safety in operation. O'Malley also voiced concern about any employee who, while under the influence of drugs, was operating dangerous equipment, mixing food ingredients, or using sharp utensils. He said, she also jeopardized the safety of others when she drove on NSA under the influence of cocaine.

Captain Clark, testified that he is responsible for the care, safety, security, and professional development of the approximately 4500 men and women of the Brigade of Midshipmen. Of particular importance in this case he said, is his role in the safety and security of Midshipmen. He said that he takes this responsibility very seriously and that maintaining a safe environment is critically important. He said the Grievant's exceptionally poor judgment caused him to question whether her behavior was a threat to the safety of the Midshipmen and her MFSD co-workers. Accordingly, he concluded that the operation of a motor vehicle on NSA while under the influence of cocaine was so egregious that the Grievant's continued employment was a risk he was not willing to take.

6

USNA argues that the Union challenges this removal action with a series of vintage and unrelated civilian employee comparable cases involving off-duty alcohol and/or drug use in which the USNA discipline was less than removal. The Union presented co-workers' and Union officials' testimony that the Grievant was good performer and, despite her serious shortfalls, they would have her back to work. None of this testimony is sufficiently material to establish that the Grievant's removal is sufficiently similar to warrant a Last Chance Agreement (LCA) or to mitigate the removal penalty.

USNA argues that the Deciding Official, Clark, testified that he applied the *Douglas* Factors to this removal and weighed the seriousness of the misconduct against the Grievant's otherwise unblemished record.[2] He decided that her removal was appropriate to protect the safety and security of Midshipmen particularly when she knowingly ingested an illegal drug and then drove on NSA. He said that because the Grievant's conduct displayed a complete indifference to the safety and security of others Clark was unwilling to return her to a USNA position.

USNA asserts that it has met its burden of proof regarding the facts of the Grievant's off-duty misconduct, the nexus to her duties as a USNA Cook, and that removal is appropriate. For these reasons, the grievance must be denied.

## B. AFGE contends as follows:

The Union asserts that the Grievant's conduct was not proper and should not be condoned. The Union asserts as well that she never denied that she engaged in misconduct and she has taken full responsibility for her actions, pled guilty and accepted the court sentence. The Union argues that the grievance must be sustained and full relief granted because USNA cannot show a nexus between her off-duty misconduct and her job. Alternatively, the penalty must be reduced because her removal is beyond the bounds of reasonableness.

AFGE asserts that there is no evidence that the Grievant operated her motor vehicle in an unsafe manner or that anyone in the vicinity was in danger or injured. Further, there no evidence that she is a habitual drug or alcohol user. Without a shred of evidence, USNA makes the entirely speculative claim that because this incident, even after 24-years of employment, her return to work would present a danger because she uses knives and

---

[2] *Curtis Douglas, et. al. vs. Veterans Administration, et. al.*, 5 MSPR 280 (1981).

hot pots and pans.

The Union argues that USNA has failed to meet the MSPB's requirement that, when off-duty misconduct is the basis for discipline, an agency must show there is a "clear and direct relationship between the articulated grounds for an adverse action and either the employee's ability to accomplish his or her duties satisfactorily or some other legitimate government interest." As the Deciding Official, Clark's analysis of the *Douglas* factors was nothing more than a tortured attempt to demonstrate that the USNA's reputation would be besmirched and Midshipmen scandalized by a Cook's unobserved and unknown off-duty misconduct. Clark's testimony did not establish that the public confidence in the USNA would be negatively affected, particularly when there was no evidence that she has contact with the public.

Despite acknowledging that the Grievant's 24-years of an unblemished record and satisfactory performance were "significant mitigating factors," Clark capriciously concluded that "they do not overshadow the nature and seriousness of the offense." AFGE argues that Clark's statement that "no other penalty [than removal] will deter illegal drug use as effectively" imposed the Draconian removal penalty without full consideration of lesser penalties in the Navy's table of penalties.

The Union asserts that the Grievant's removal is beyond the bounds of reasonableness because her supervisors, Hunt and Johnson, for 9 to 10 years, testified that they were willing to work with her again. Furthermore, O'Malley, the Food Service Director, recommended that the Grievant be given a LCA which also supports the conclusion that removal is beyond the bounds of reason.

Finally, the Grievant's removal is plainly beyond the bounds of reasonableness when a 14-day suspension was imposed on employees in comparable discipline actions when they were involved in a drive-by, drug-related shooting; they were intoxicated on-duty and when threatened supervisors; and when they drank beer with Midshipmen. Moreover, in another comparable disciplinary action, the only employee removed was incarcerated after being charged with possession with intent to distribute crack cocaine.

For all these reasons, AFGE's grievance should be sustained and the Grievant reinstated with full back pay and benefits. In the alternative, the penalty of removal should be mitigated.

8

## IV. Analysis and Award

The USNA bears the burden of proof to prove that the Grievant's removal was for just cause. For the reasons discussed below, the Arbitrator finds USNA has met its burden of proof, and the Grievant was removed for just cause, and AFGE's grievance is denied.

As a threshold matter, the Union did not present evidence or argument regarding the grievance claim that USNA violated Article 38, Sections 1 and 2, *Employee Assistance Program*. For this reason, the Arbitrator finds this grievance claim is abandoned.

The facts are not in dispute. It is the meaning of the facts on which the Parties cannot agree. It is undisputed that the Grievant was off-duty when she was stopped by a USNA Police Officer while operating her motor vehicle on the NSA facility based on a report that she may have been under the influence of drugs or alcohol.

Furthermore, the Police Officer's testimony, investigation and ensuing tests established that she appeared to be impaired or under the influence of drugs or alcohol. Finally. the Grievant admitted to the Police Officer she had, "snorted coke the night before." As a consequence of her off-duty misconduct the USNA removed the Grievant from her position as a USNA Cook for "being under the influence of illegal drugs and alcohol while off-duty on Government property." (Jx 2, Tabs D and E).

Based on these facts, particularly supported by the Police Officer's testimony and the Grievant's admission, the Arbitrator finds the Grievant was under the influence of illegal drugs and alcohol while off-duty on Government property. Moreover, AFGE asserts that "Harding has never denied that she engaged in the conduct which she has been accused." (AFGE Brief, p 14). The core of AFGE's grievance challenging the Grievant's removal is that the USNA's removal penalty was too severe and the Arbitrator must mitigate the penalty.

Specifically, AFGE asserts eight reasons to sustain its grievance challenging Harding's removal as a USNA Cook. First, AFGE asserts that the USNA's claimed nexus between the Grievant's off-duty misconduct and her job is wholly speculative. Next, AFGE asserts the Grievant is a dependable and responsible employee so that the USNA conclusion that her reinstatement would be a threat is also speculative. AFGE asserts that the USNA's claim that other employees, Midshipmen, parents and public would be scandalized by a lesser penalty than removal is specious. Next, AFGE asserts that, based

9

on the totality of the circumstances and the Navy's table of penalties, removal exceeds the bounds of reasonableness. Next, AFGE asserts removal is an exemplary penalty contrary to the *Douglas* factors. Next, AFGE asserts the Navy's table of penalties includes a 14-day suspension for a first offense. Next, AFGE asserts since the Grievant's second-level supervisor concluded a lesser penalty would be sufficient, the Deciding Official's claim he considered a lesser penalty is not persuasive. Finally, AFGE asserts the Navy has imposed lesser penalties in other cases of serious misconduct involving substance abuse.

## A. Nexus

When there is a nexus, an adequate relationship, between an employee's off-duty misconduct and job duties, it is well established, arguably axiomatic, that an employer has just cause to discipline the employee. AFGE does not contend otherwise regarding this well established legal axiom. However, the Union argues that there is *no* nexus between the Grievant's off-duty misconduct and her job duties.

An overwhelming preponderance of evidence and the Grievant's admission establish that she was operating her vehicle on NSA, the employer's property, while under the influence of drugs and/or alcohol. This is an extremely serious violation of USNA work rules.

The record establishes that as a USNA Cook, who was responsible for food preparation for and service to 4500 Midshipmen, the Grievant held an important, demanding job. The record shows that her job required high-level skills involving not only the safe operation of food preparation equipment, but also the safe preparation, service and storage of food served to those 4500 Midshipmen and others.

Based on these facts and circumstances, the Arbitrator finds that the nexus between the Grievant's off-duty misconduct and her job duties is self-evident and by no means speculative as AFGE argues. This is particularly true since as her off-duty misconduct occurred on NSA which is Navy property.

## B. Penalty

The USNA table of penalties states that for the misconduct of "unlawful use, being under the influence, or possession of drugs or drug paraphernalia on or off duty" the range of penalties for a first offense is "14-day suspension to removal." (Jx 2, Tab H). While at

10

the outer extreme of the range of penalties, removal is within the tolerable bounds of reasonableness provided the Deciding Official properly applied the *Douglas* Factors controlling principles and provided he did not impose a disparate or discriminatory penalty.

The Union did not asserted the penalty of removal was discriminatory in its grievance at hearing or in its post-hearing brief and the Union did not present any evidence to support either defense to the penalty of removal. For these reasons, the Arbitrator finds record contains no evidence that the Deciding Officials removal decision was based on discriminatory grounds. AFGE's defense that the removal penalty constituted disparate treatment is discussed below.

The remaining AFGE grievance challenges assert that the level of penalty imposed by the Deciding Official was too severe and a lesser penalty would be corrective and not punitive for a number of reasons. AFGE also argues that the penalty of removal amounts to disparate treatment compared to other disciplinary actions for similar misconduct.

By way of review, AFGE argues that: the Grievant would not be a threat if returned to work; others would not be scandalized by a lesser penalty; the removal penalty exceeds the bounds of reasonableness; the removal is an exemplary penalty contrary *Douglas*; the Navy's table of penalties includes a 14-day suspension for a first offense; the second-level supervisor concluded a lesser penalty sufficient; and there have been lesser penalties in other comparable cases.

Simply stated, AFGE's arguments, except its claims regarding disparate treatment based on comparable cases, assert that the Deciding Official, Captain Robert E. Clark II, Commandant of Midshipmen, misapplied the *Douglas* Factors.

Contrary to AFGE's argument, Clark's March 9, 2012 Decision and his supporting testimony show a careful and reasoned consideration of the applicable *Douglas* Factors. (Jx 2, Tab E and Tr 63-104). The Arbitrator finds that AFGE's challenges amount to disagreements with Clark's conclusion and for this reason alone are without merit. In addition, AFGE has not revealed errors in Clark's reasoning or conclusions regarding his application of the *Douglas* Factors which would form a legal basis for the Arbitrator to reverse or mitigate his determination on the appropriate penalty even assuming, *arguendo*, that the Arbitrator might have reached a different conclusion regarding penalty.

11

Under all the facts and circumstances, to mitigate the penalty of removal, for the reasons AFGE advances, would constitute an inappropriate and illegal substitution of the Arbitrator's judgment for that of the Deciding Official under the specific facts and circumstances of this case.

## C. Comparable Disciplinary Actions

Turning finally to the other disciplinary actions which AFGE argues demonstrate lesser penalties have been imposed for comparable misconduct disciplinary actions (comparators). AFGE's witness **Clyde Carr, Sr.**, AFGE, Local 1923 Chief Steward described a January 2002 removal action against an USNA Materials Handler arrested by a civilian police department for his involvement in a drug related drive-by shooting. (Ux 1 and Tr 138-154). The record shows that as a result of the employees confinement only, he was discharged for a third-offense AWOL. As an option to removal, the employee was offered and accepted a last chance agreement (LCA). The Arbitrator finds that this comparator is so attenuated by time and without comparable facts and circumstances so as to have no material value.

AFGE witness **Edward Gough, IV**, Vice President AFGE, Local 1923, described a March 2003 proposed 30-day suspension of a USNA Public Works employee who returned from lunch intoxicated which evolved into a LCA. (Ux 2 and Tr 155-174). As well as being attenuated in time, the facts and circumstances of this comparator are materially different and not comparable to the Grievant's disciplinary action. Furthermore, the LCA appears to be a settlement of the removal action. In this light, this disciplinary action cannot be considered as a comparator because arbitral precedent holds settlements are not admissible.

AFGE also submitted USNA documents relating to six disciplinary actions regarding incidents of misconduct by USNA employees involving drug and/or alcohol from September 2009 through May 2012. (Jx 7). Two related May 2012 disciplinary actions involved consumption of beer while USNA employees were working an official function resulting in 14-day suspensions for the employees. Two July 2009 and April 2010 disciplinary actions involved USNA employees being under the influence of alcohol while on-duty resulting in 14-day suspensions for the employees. Finally, two disciplinary actions from January 2009 and September 2009 involved off-duty arrests for possession and possession with intent to distribute cocaine resulting in incarceration and removal of the employees.

12

The September 2009 disciplinary action was settled with a resignation. (Jx 7). For the reason described above regarding settlements, this comparator is inadmissible.

Based on the facts and circumstances described in these comparator documents, only the January 2009 disciplinary action approaches being comparable to USNA's discipline of Harding and that disciplinary action was the removal of the employee.

Based on these comparators, the Arbitrator finds that AFGE has failed to establish that the Grievant's removal constituted disparate treatment as regards the appropriate penalty.

Therefore, based on the totality of the facts and circumstances, the Arbitrator finds that the penalty of removal in this disciplinary action does not exceed the tolerable limits of reasonableness.

For all these reasons, the Arbitrator finds that the Grievant's removal was for just cause. AFGE's grievance is denied.

## AWARD

Based on the record developed by the Parties and for the reasons discussed above, the Union's grievance denied.


Sean J. Rogers, Esq.
Leonardtown, Maryland
January 31, 2013

13

**A13**

## United States Court of Appeals
## for the Federal Circuit

*HANNAH HARDING v. UNITED STATES NAVAL ACADEMY*, No. 13-3092

### CERTIFICATE OF SERVICE

I, Elissa Matias, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by THOMAS J. GAGLIARDO, Counsel for Petitioner to print this document.  I am an employee of Counsel Press.

On **November 27, 2013**, Counsel for Petitioner has authorized me to electronically file the foregoing **Brief for Petitioner** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

> Domenique G. Kirchner
> Director, Commercial Litigation Branch, Civil Division
> Department of Justice
> P.O. Box 480
> Ben Franklin Station
> Washington, DC 20044
> 202-307-1111
> Domenique.Kirchner@usdoj.gov

Paper copies will also be mailed to the above counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court, via Federal Express, within the time provided in the Court's rules.

November 27, 2013

/s/ Elissa Matias
Counsel Press

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

__X__ The brief contains <u>9,823</u> words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

_____ The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

__X__ The brief has been prepared in a proportionally spaced typeface using <u>MS Word 2007</u> in a <u>14</u> point <u>Times New Roman</u> font or

_____ The brief has been prepared in a monospaced typeface using _____ _____ in a ___ characters per inch_____ font.

<u>November 27, 2013</u>              (s) <u>/s/ Thomas J. Gagliardo</u>
Date                                          Thomas J. Gagliardo
                                              Counsel for Petitioner